1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ANDREW U. D. STRAW,

                        Plaintiff,

        v.

AVVO, INC.,

                        Defendant.

CASE NO. C20-0294JLR

ORDER ON MOTION TO
DISMISS, MOTION FOR ORDER
TO SHOW CAUSE, MOTION TO
ALLOW SUPPLEMENTAL
AUTHORITY, MOTION FOR
LEAVE TO FILE AFFIDAVIT,
AND MOTION FOR JUDICIAL
NOTICE

## I.   INTRODUCTION

There are five motions before the court: (1) Defendant Avvo, Inc.'s ("Avvo")

motion to dismiss Plaintiff Andrew U. D. Straw's complaint (MTD (Dkt. # 27); *see also*

MTD Reply (Dkt. # 40)); (2) Mr. Straw's motion for an order to show cause (MSC (Dkt.

# 29); *see also* MSC Reply (Dkt. # 37)); (3) Mr. Straw's "motion to allow supplemental

authority" (1st MTA (Dkt. # 30)); (4) Mr. Straw's "motion to allow attached affidavit and

exhibit into the record" (2d MTA (Dkt. # 33)); and (5) Mr. Straw's motion for judicial

notice (MJN (Dkt. # 43)).  Mr. Straw opposes the motion to dismiss.  (MTD Resp. (Dkt. # 28).)  Avvo opposes the motion for an order to show cause.  (MSC Resp. (Dkt. # 36).)  The court has considered the motions, the parties' submissions filed in support of and in opposition to the motions, the relevant portions of the record, and the applicable law.  Being fully advised, the court GRANTS Avvo's motion, DISMISSES Mr. Straw's complaint without prejudice and with leave to amend, and DENIES Mr. Straw's motions.

## II.   BACKGROUND

### A.   Factual Background

This is a defamation case against Avvo—a website which compiles and maintains an electronic directory of lawyers—regarding information Avvo published about Mr. Straw.  (*See* Am. Compl. (Dkt. # 13) ¶¶ 4-32.)  Mr. Straw, an attorney, alleges that Avvo published "false information" about him in its directory that made him look "terrible."  (*See id.* ¶ 4.)  Although Mr. Straw's complaint is not a model of clarity, it appears that Mr. Straw takes issue with two specific statements Avvo published about him:  (1) the "3.1 score out of 10" that Avvo lists on Mr. Straw's directory page (*see id.* ¶ 6); and (2) allegedly false information regarding Mr. Straw's Virginia State Bar law license that stated that Mr. Straw's bar status in Virginia was "not active but disabled" (*see id.* ¶¶ 24-26).  Mr. Straw claims that the allegedly false statements and poor ranking on his Avvo profile have harmed him and prevented him from obtaining clients.  (*See id.* ¶¶ 7, 29.)

Mr. Straw also alleges that his low rating on Avvo is a result of collusion between Avvo and the State of Indiana regarding a recent disciplinary action in Indiana against Mr. Straw.  (*See id.* ¶¶ 8-22.)  More specifically, Mr. Straw claims that the Indiana

1  Supreme Court wrongfully disciplined him for allegedly frivolous filings and

2  discriminated against him in the process, and he alleges that Avvo is "cooperating with"

3  Indiana by "expanding the reach of injury to the entire world" through its web directory.

4  (*See id.*)  According to Mr. Straw, Virginia determined that Mr. Straw did not deserve to

5  be disciplined, but Avvo failed to include that information on his profile.  (*See id.*

6  ¶¶ 13-14.)

7         Mr. Straw also notes that he has "severe physical and mental disabilities from

8  public service" and alleges that he is a "disability rights political figure."  (*See id.*

9  ¶¶ 36-40.)

10 **B.**    **Procedural History**

11        Mr. Straw filed his operative amended complaint on April 9, 2020.  (*See generally*

12 *id.*)  In the amended complaint, Mr. Straw pleads causes of action for (1) defamation; (2)

13 tortious interference with contractual relations; (3) intentional infliction of emotional

14 distress ("IIED"); and (4) discrimination in violation of Title II of the Americans with

15 Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165.  (*See* Am. Compl. ¶¶ 49-60.)  Mr.

16 Straw claims $1,500,000.00 in damages.  (*See id.* ¶ 61.)  He also requests a declaratory

17 judgment stating that (1) "if an attorney who is disabled is suspended as Indiana has done

18 and another state exonerates him, he or she may ask all attorney directory websites like

19 Avvo to remove her or his profile with information about the suspension and it must be

20 done when asked and with no delay"; and (2) Indiana's policy "banning all disabled

21 people from the practice of law" violates Title II of the ADA.  (*See id.* ¶¶ 62-63.)

22 *//*

1      Since the court granted Mr. Straw leave to proceed *in forma pauperis* on February

2   25, 2020, Mr. Straw filed 11 motions:  a motion for U.S. Marshal service of the summons

3   and complaint (Dkt. # 5); a motion for "PACER access and CM/ECF" (Dkt. # 6); a

4   motion to amend the complaint (Dkt. # 8); a motion for "operative complaint to be

5   recognized *instanter* and Clerk to issue summons for service" (Dkt. # 14); a "motion

6   regarding service" (Dkt. # 17); a "new motion for PACER access and refunds" (Dkt.

7   # 18); a motion for reconsideration of the court's order denying his "new motion for

8   PACER access and refunds" (Dkt. # 21); and the four motions currently before the court

9   (*see* MSC; 1st MTA; 2d MTA; MJN).  In that same timeframe, Mr. Straw filed 11

10  "notices" regarding a wide assortment of topics like the impact that Mr. Straw believes

11  his upbringing at a Naval hospital had on his mental illness (*see* Dkt. # 15); the alleged

12  fraudulent overcharges Mr. Straw believes he received from PACER (*see* Dkt. # 19); and

13  the disciplinary action he is pursuing against Avvo's counsel in this case in California

14  and Washington (*see* Dkt. ## 31, 35, 41).

15                          **III.    ANALYSIS**

16      In its motion to dismiss, Avvo argues that each of Mr. Straw's causes of action

17  should be dismissed for failure to state a claim under Federal Rule of Civil Procedure

18  12(b)(6).  (*See* MTD at 4-10.)  In response to Avvo's motion to dismiss, Mr. Straw moves

19  for an order to show cause why Avvo and its counsel should not be sanctioned for

20  arguments Avvo advanced in its motion to dismiss.  (MSC at 1-3.)  Mr. Straw also filed

21  two motions "to allow" certain evidence into the record.  (*See generally* 1st MTA; 2d

22  MTA.)  The first motion includes "further authority and citations on punitive damages"

ORDER - 4

1    that Mr. Straw believes is relevant to his motion for an order to show cause.  (*See* 1st

2    MTA at 1-2).  The second motion relates to information about an email that Mr. Straw

3    received from "[a]n apparent partner company of Avvo" that Mr. Straw claims was

4    "meant to entice [him] into buying a plaque."  (*See* 2d MTA at 2.)  Finally, Mr. Straw's

5    motion for judicial notice requests that the court take judicial notice of records from the

6    Virginia State Bar regarding Mr. Straw's Virginia bar license.  (*See* MJN at 1-3.)

7    Because Mr. Straw's motions to allow certain evidence into the record and his motion for

8    judicial notice potentially impact the materials the court considers on Avvo's motion to

9    dismiss and Mr. Straw's other motions, the court addresses these motions first before

10   turning to the substantive motions.

11   **A.      Mr. Straw's Motions to Supplement the Record**

12         The court denies Mr. Straw's motions to allow and for judicial notice.  In each

13   motion, Mr. Straw includes arguments and supplemental evidence that Mr. Straw

14   believes is relevant to Avvo's motion to dismiss, Mr. Straw's motion to show cause, or

15   the overarching merits of Mr. Straw's claims against Avvo.  (*See* MJN at 1-3 (arguing

16   that Mr. Straw's Virginia State Bar records are relevant to remedy "confusion" on Avvo's

17   part regarding the status of Mr. Straw's bar license); 1st MTA at 4 (asking the court to

18   consider certain "citations and references and comments" regarding punitive damages in

19   resolving Avvo's motion to dismiss and Mr. Straw's motion to show cause); 2d MTA at

20   1-2 (arguing that it "seems to me relevant" to this litigation that one of Avvo's partner

21   companies sent Mr. Straw an email attempting to convince Mr. Straw to buy a plaque

22   with statements that Mr. Straw believes are "false").

ORDER - 5

1    These attempts to supplement the record are improper under the court's local

2    rules.  Local Civil Rule 7 requires that any argument in support of a motion "shall not be

3    made in a separate document but shall be submitted as part of the motion itself."  *See*

4    Local Rules W.D. Wash LCR 7(b)(1).  Moreover, where a motion, opposition, or reply

5    requires facts beyond what already appears in the record, the movant must file that that

6    evidence with the underlying motion.  *See id.*, LCR 7(b)(1)-(3).  Thus, Mr. Straw cannot

7    simply file a new "motion to allow" or a "notice" any time that he wants the court to

8    consider evidence or argument that he believes is pertinent to a motion already pending

9    before the court.  Instead, if Mr. Straw believes that the evidence or arguments he

10   includes in his motions to supplement the record are relevant to either of the substantive

11   motions before the court, the local rules require him to include that information in his

12   motion, opposition, reply, or a document like a declaration filed contemporaneously in

13   support of a brief.  *See id.*  Accordingly, the court denies Mr. Straw's motions to allow

14   and for judicial notice.

15   In addition to the foregoing procedural deficiencies, Mr. Straw's motions are also

16   substantively deficient.  Mr. Straw's citations and arguments regarding punitive damages

17   are not relevant to the issues presented by Mr. Straw's motion for an order to show cause

18   or Avvo's motion to dismiss (*see* 1st MTA at 1-4); Mr. Straw fails to identify any

19   relevance that a marketing email from an Avvo partner company offering to sell Mr.

20   Straw a plaque has on this litigation (*see* 2d MTA at 1-2); and Mr. Straw offers no

21   argument or citations in support of his claim that "[t]he [c]ourt has authority to take

22   notice" of the facts contained in a letter Mr. Straw alleges he received from the Virginia

1   State Bar (*see* MJN at 1-3).  Accordingly, the court denies Mr. Straw's motions on these

2   grounds as well.

3          In sum, the court DENIES Mr. Straw's motions to allow (*see* 1st MTA; 2d MTA)

4   and Mr. Straw's motion for judicial notice (*see* MJN) due to these substantive and

5   procedural deficiencies and does not consider these materials in its disposition of the

6   remaining motions at issue here

7   **B.    Motion to Dismiss**

8          1.     <u>Legal Standard</u>

9          Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to

10  state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When

11  considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in

12  the light most favorable to the nonmoving party.  *See Livid Holdings Ltd. v. Salomon*

13  *Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept all

14  well-pleaded facts as true and draw all reasonable inferences in favor of the claimant.

15  *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).

16  The court, however, is not required "to accept as true allegations that are merely

17  conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v.*

18  *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

19         "To survive a motion to dismiss, a complaint must contain sufficient factual

20  matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

21  *v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

22  570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir.

ORDER - 7

1    2010).  "A claim has facial plausibility when the plaintiff pleads factual content that

2    allows the court to draw the reasonable inference that the defendant is liable for the

3    misconduct alleged."  *Iqbal*, 556 U.S. at 677-78.  Dismissal under Rule 12(b)(6) can be

4    based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

5    under a cognizable legal theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

6    (9th Cir. 1990).

7          2.    <u>Merits</u>

8             a.    *Defamation*

9          "A defamation action consists of four elements: (1) a false statement, (2)

10   publication, (3) fault, and (4) damages."  *Duc Tan v. Le*, 300 P.3d 356, 363 (Wash. 2013).

11   Mr. Straw's complaint appears to allege two sets of false statements:  (1) Mr. Straw's

12   Avvo web profile rating, which shows a "3.1 score out of 10"; and (2) statements on Mr.

13   Straw's Avvo profile indicating that he does not have an active law license in Virginia.

14   (*See* Am. Compl. ¶ 50.)

15         Mr. Straw cannot plead a defamation claim based on his Avvo rating because

16   Avvo's statements about Mr. Straw's rating are absolutely protected by the First

17   Amendment.  *See Browne v. Avvo Inc.*, 525 F. Supp. 2d 1249, 1251-54 (W.D. Wash.

18   2007) (dismissing a defamation claim based on poor Avvo rating at the 12(b)(6) stage

19   because "the opinions expressed through the [Avvo] rating system, (*i.e.*, that attorney X

20   is a 3.5 and/or that an attorney with a higher rating is better able to handle a particular

21   case than an attorney with a lower rating), are absolutely protected by the First

22   Amendment and cannot serve as the basis for liability under state law").  In *Browne*, the

1  court held that Avvo ratings are subjective, "an abstraction," and not susceptible of being

2  proved true or false.  *See id.*  Accordingly, an Avvo rating does not imply "an assertion of

3  objective fact," and, as such, constitutes an opinion statement protected by the First

4  Amendment.  *See id.*  Thus, Mr. Straw's Avvo rating cannot serve as the basis for his

5  defamation claim.

6          Mr. Straw's second basis for his defamation claims—Avvo's allegedly false

7  statement that Mr. Straw did not have an active Virginia State Bar license—fails because

8  Mr. Straw has not adequately alleged damages.  "A defamation plaintiff may recover for

9  actual injuries only."  *Wood v. Battle Ground Sch. Dist.*, 27 P.3d 1208, 1221-22 (Wash.

10  Ct. App. 2001) (citing *Taskett v. KING Broad. Co.*, 546 P.2d 81, 86 (Wash. 1976)).

11  However, a defamation plaintiff may be entitled to presumed damages under the

12  defamation *per se* doctrine.  *See Haueter v. Cowles Pub. Co.*, 811 P.2d 231, 235 (Wash.

13  Ct. App. 1991).  "A defamatory publication is libelous *per se* (actionable without proof of

14  special damages) if it (1) exposes a living person to hatred, contempt, ridicule or obloquy,

15  or to deprive him of the benefit of public confidence or social intercourse, or (2) injures

16  him in his business, trade, profession or office."  *Caruso v. Local Union No. 690 of Int'l*

17  *Bhd. of Teamsters*, 670 P.2d 240, 245 (Wash. 1983).  However, presumed damages are

18  only available under the defamation *per se* doctrine if "liability is based upon malice."

19  *See Wood*, 27 P.3d at 1222 (citing *Story v. Shelter Bay Co.*, 760 P.2d 368, 375 (Wash. Ct.

20  App. 1988); *see also Caruso*, 670 P.2d at 246 (rejecting trial court's jury instruction that

21  "permitted the jury to presume damages when liability was not based on actual malice").

22  *//*

ORDER - 9

Mr. Straw pleads a defamation *per se* theory in this case. (*See* Am. Compl. ¶ 50 (alleging that Avvo's statements caused him "injury *per se*").) Mr. Straw claims that he has suffered "$750,000 in damages for the defamation" and does not allege actual or special damages.[1] (*See id.*) Thus, Mr. Straw is entitled to recover presumed damages if he establishes that (1) Avvo's statements about his Virginia State Bar license status are defamatory *per se* and (2) Avvo published those statements with actual malice. *See Wood*, 27 P.3d at 1222; *Caruso*, 670 P.2d at 246.

Even if Mr. Straw could establish that Avvo's statements are defamatory *per se*— an issue that neither party briefed with any specificity (*see* MTD at 6-7; MTD Resp. at 1-6)—Mr. Straw still fails to state a claim for defamation because he has not plausibly pleaded that Avvo acted with actual malice. Actual malice exists when a false statement is made "with knowledge of its falsity or with reckless disregard of its truth or falsity." *Doe v. Gonzaga Univ.*, 24 P.3d 390, 398 (Wash. 2001), *rev'd on other grounds*, 536 U.S. 273 (2002) (quoting *Herron v. KING Broad. Co.*, 746 P.2d 295, 301 (Wash. 1987)). "To prove actual malice a party must establish that the speaker knew the statement was false, or acted with a high degree of awareness of its probable falsity, or in fact entertained serious doubts as to the statement's truth." *Id.* (citations omitted).

Here, Mr. Straw offers only a conclusory allegation that Avvo "published these falsehoods with malice" and made statements that "demonstrated malice." (*See* Am.

---

[1] Because Mr. Straw does not plead actual or special damages and instead alleges that Avvo's statements caused him "injury *per se*" (*see* Am. Compl. ¶ 50), the court need not address Avvo's arguments that Mr. Straw failed to adequately plead that Avvo's statements proximately caused his damages (*see* MTD at 7; MTD Resp. at 1).

1   Compl. ¶ 50.)  However, Mr. Straw's complaint contains no statements of fact suggesting

2   that Avvo posted statements about his license status with the Virginia State Bar with

3   knowledge that those statements were false, with a high degree of awareness that the

4   statements were false, or with serious doubts about the truth of those statements.[2]  (*See*

5   *generally* Compl.)  To the contrary, the complaint alleges that once Mr. Straw notified

6   Avvo of the alleged discrepancy on his profile and sent documentary proof, Avvo

7   "removed" the statement and "corrected" the error.  (*See id.* ¶¶ 24-28.)  At most, Mr.

8   Straw alleges that "Avvo should have had the proper information" about the status of his

9   license in Virginia.  (*See id.* ¶ 26.)  But Mr. Straw's allegation that Avvo should have

10  done more to update statements about his license status in Virginia is not enough to show

11  that Avvo made the statements on his profile "with knowledge of [their] falsity or with

12  reckless disregard of [their] truth or falsity."  *Gonzaga Univ.*, 24 P.3d at 398.

13        Absent sufficient factual allegations of actual malice to sustain Mr. Straw's

14  defamation *per se* claim, Mr. Straw has not plausibly pleaded damages.[3]  Thus, Avvo's

15  statements regarding Mr. Straw's Virginia State Bar license status also cannot serve as

16  the basis for Mr. Straw's defamation claim.  Because neither of the two allegedly

17  defamatory statements pleaded in Mr. Straw's complaint state a claim for defamation, the

18

19      [2] The court notes that Mr. Straw also fails to respond to Avvo's argument that he has not

20  alleged actual malice.  (*See generally* MTD Resp.)  The court is entitled to construe Mr. Straw's
    failure to respond to this argument as a concession that Avvo's argument has merit.  *See* Local
    Rules W.D. Wash. LCR 7(b)(2).

21      [3] Because the court concludes that Mr. Straw fails to plead damages, the court declines to

22  address Avvo's arguments that its statements about Mr. Straw's Virginia State Bar license were
    not false or privileged.  (*See* MTD at 5 n.2, 6.)

1    court GRANTS Avvo's motion to dismiss as the motion pertains to Mr. Straw's

2    defamation claims.

3              b.       *Tortious Interference*

4         A party claiming tortious interference with a contractual relationship or business

5    expectancy must prove five elements:

6         (1) the existence of a valid contractual relationship or business expectancy;
          (2) that defendants had knowledge of that relationship; (3) an intentional
7         interference inducing or causing a breach or termination of the relationship
          or expectancy; (4) that defendants interfered for an improper purpose or used
8         improper means; and (5) resultant damage.

9    *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 144 P.3d 276, 280 (Wash. 2006)

10   (citations omitted).  Mr. Straw's tortious interference claim fails at the first element.  For

11   a tortious interference claim, a prospective contractual relationship or business

12   expectancy that has not yet come to fruition may be sufficient, but the plaintiff must show

13   that there is a "relationship between parties contemplating a contract, with at least a

14   reasonable expectancy of fruition."  *Scymanski v. Dufault*, 491 P.2d 1050, 1055 (Wash.

15   1971).  The plaintiff must "tie … losses to specific relationships" between the plaintiff

16   and "identifiable third parties."  *Pac. Nw. Shooting Park Ass'n*, 144 P.3d at 281.  Here,

17   Mr. Straw alleges that Avvo's actions "interfered with [his] ability to contract with the

18   people who visited [Avvo]," but he does not offer any identifiable third parties—nor

19   explain why he had a reasonable expectancy of fruition with any third parties—beyond

20   the amorphous group of Avvo users, which is inadequate.  (*See* Am. Compl. ¶ 51); *see*

21   *also Pac. Nw. Shooting Park Ass'n*, 144 P.3d at 281 n.2 (noting than an alleged

22   relationship with "some amorphous group of people" is insufficient to identify a valid

1    business expectancy).  Because he cannot establish a valid business expectancy, Mr.

2    Straw also cannot allege that Avvo had knowledge of any such expectancy.  Accordingly,

3    the court GRANTS Avvo's motion to dismiss Mr. Straw's tortious interference claim.[4]

4                    c.      *Intentional Infliction of Emotional Distress*

5              The burden of proof on an IIED claim is stringent.  *See Lyons v. U.S. Bank Nat'l*

6    *Ass'n*, 336 P.3d 1142, 1151 (Wash. 2014) (explaining that a successful IIED claim

7    "requires proof that the conduct was so outrageous in character, and so extreme in degree,

8    as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

9    utterly intolerable in a civilized community") (internal quotations and citation omitted).

10   To prevail on an IIED claim, "a plaintiff must prove (1) outrageous and extreme conduct

11   by the defendant, (2) the defendant's intentional or reckless disregard of the probability

12   of causing emotional distress, and (3) actual result to the plaintiff of severe emotional

13   distress."  *Steinbock v. Ferry Cty. Pub. Util. Dist. No. 1*, 269 P.3d 275, 282 (Wash. Ct.

14   App. 2011).

15   //

16

17            [4] Although Mr. Straw's failure to identify a business expectancy is fatal to his tortious
     interference claim, the court also notes that Mr. Straw fails to adequately plead any of the final
     three elements.  (*See* Am. Compl. ¶ 51.)

18             The court also agrees with Avvo that Mr. Straw's tortious interference claim fails insofar
     as it relies on Mr. Straw's Avvo rating because that rating is entitled to First Amendment

19   protection. Tortious interference claims based on protected speech are "subject to the same First
     Amendment requirements that govern actions for defamation."  *Gardner v. Martino*, 563 F.3d

20   981, 992 (9th Cir. 2009); *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806,
     821 (9th Cir. 2002); *Elec. Recycling Ass'n of Alta. v. Basel Action Network*, No. C18-1601MJP,

21   2019 WL 1453575, at *4 (W.D. Wash. Apr. 2, 2019) ("A tortious interference claim brought as a
     result of constitutionally protected speech is subject to the same requirements that govern actions
     for defamation."); *Stidham v. State, Dep't of Licensing*, 637 P.2d 970, 973 (Wash. Ct. App.

22   1981).

1    Mr. Straw's allegations do not state an IIED claim.  Fundamentally, Mr. Straw

2    alleges that Avvo posted "damaging information on [his] Avvo profile for the whole

3    world to see."  (*See* Am. Compl. ¶ 52.)  The conduct Mr. Straw describes does not rise to

4    the level of "outrageous and extreme."  *See Steinbock*, 269 P.3d at 282.  Even if it did,

5    Mr. Straw's threadbare allegations that Avvo acted "intentionally or with recklessness

6    and willfulness" are exactly the kind of conclusory allegations that are insufficient to

7    survive a Rule 12(b)(6) motion.  *See Sprewell*, 266 F.3d at 988 (noting that a court is not

8    required "to accept as true allegations that are merely conclusory, unwarranted

9    deductions of fact, or unreasonable inferences").  Accordingly, the court GRANTS

10   Avvo's motion to dismiss Mr. Straw's IIED claim.[5]

11              d.    *ADA Title II Claim*

12          The scope of Mr. Straw's ADA claim is difficult to discern.  (*See* Am. Compl.

13   ¶¶ 56-60.)  As best the court can tell, it appears that Mr. Straw's theory is that the State of

14   Indiana discriminated against him in violation of the anti-retaliation provisions of Title II

15   of the ADA, *see* 42 U.S.C. § 12203, and that Avvo has "cooperate[d]" and "collud[ed]"

16   with Indiana.  (*See* Am. Compl. ¶¶ 56-60.)  A *prima facie* case of retaliation in violation

17   of Title II of the ADA requires Mr. Straw to show:  "(1) involvement in a protected

18   activity, (2) an adverse employment action and (3) a causal link between the two."

19   *Alvarado v. Cajun Operating Co.*, 588 F.3d 1261, 1269 (9th Cir. 2009).  Here, Mr. Straw

20

21              [5] Because Mr. Straw's IIED claim fails on its own, the court need not address Avvo's

22   argument that the IIED claim fails because it is based on Mr. Straw's insufficient defamation
     claim.  (*See* MTD at 9.)

1    does not adequately plead any of these three elements.  Mr. Straw appears to claim that

2    his protected activity was "fil[ing] a lawsuit under the ADA as an aggrieved person with

3    a disability."  (*See* Am. Compl. ¶ 56.)  He does not, however, plead sufficient specifics

4    about that lawsuit or provide any citations in his opposition in support of his argument

5    that the lawsuit constitutes protected activity under Title II of the ADA.  (*See* Am.

6    Compl. ¶¶ 56-60; MTD Resp. at 5-6.)

7         Even if Mr. Straw had adequately supported his position that he engaged in

8    protected activity, however, he does not identify an adverse employment action or any

9    causal link between Avvo's conduct in maintaining his Avvo profile, Mr. Straw's

10   involvement in filing an ADA lawsuit, and Mr. Straw's adverse employment action.  (*See*

11   Am. Compl. ¶¶ 56-60.)  Mr. Straw's conclusory allegations that Avvo somehow colluded

12   with or cooperated with Indiana's disciplinary actions against him are not grounded in

13   fact and not sufficient to state an ADA retaliation claim.  Accordingly, the court

14   GRANTS Avvo's motion to dismiss Mr. Straw's ADA claim.

15        3.   Leave to Amend

16        The general rule in the Ninth Circuit is that "[a] district court should not dismiss a

17   *pro se* complaint without leave to amend unless 'it is absolutely clear that the deficiencies

18   of the complaint could not be cured by amendment.'"  *Akhtar v. Mesa*, 698 F.3d 1202,

19   1212 (9th Cir. 2012) (quoting *Schucker v. Rockwood*, 846 F.2d 1202, 1203-04 (9th Cir.

20   1988)).  Although Mr. Straw is an attorney, which typically means this rule of leniency

21   does not apply to him with the same force, *see, e.g.*, *Lima v. United States Dep't of Educ.*,

22   No. CV 15-00242 KSC, 2017 WL 2265888, at *9 n.13 (D. Haw. Apr. 25, 2017)

("Because Plaintiff was an attorney, he is not entitled to the liberal standards afforded to non-attorney pro se plaintiffs.") (collecting cases), the court treats his filings with the same leniency afforded to *pro se* parties due to Mr. Straw's alleged disabilities (*see* Am. Compl. ¶¶ 35-48.)

Out of an abundance of caution, the court GRANTS Mr. Straw leave to amend the complaint. The court cannot conclude at this time that it is "absolutely clear" that the deficiencies identified in this order could not be cured by amendment. *See Akhtar*, 689 F.3d at 1212. However, the court advises Mr. Straw to carefully consider the deficiencies and caselaw identified in this order and to correct them if he decides to re-plead his claims. If Mr. Straw files another deficient complaint against Avvo, the court is unlikely to grant him another opportunity to amend.

**C.     Mr. Straw's Motion for an Order to Show Cause**

In his motion for an order to show cause, Mr. Straw asks the court to issue an order to show cause as to why Avvo and Avvo's counsel should not be sanctioned based on certain legal positions Avvo took in its motion to dismiss. (*See* MSC at 1-4.) Mr. Straw alleges that the motion to dismiss contains "lies" and "falsehoods" and attempts to "deceive the [c]ourt." (*See id.*) Mr. Straw argues that sanctions are appropriate under the court's inherent authority, Federal Rule of Civil Procedure 11, and Federal Rule of Civil Procedure 60(b)(3). (*See id.* at 1-3.) He asks for a default judgment against Avvo, his full compensatory damages, and $7,500,00.00 in punitive damages. (*See id.* at 4.)

Mr. Straw's motion falls woefully short of identifying any sanctionable conduct on Avvo's behalf. First, Mr. Straw failed to comply with the procedural requirements of

ORDER - 16

Rule 11.  *See* Fed. R. Civ. P. 11(c)(2) (requiring movants to provide non-movants with 21

days' notice of the motion for sanctions).  Further, Mr. Straw's motion fails to identify

any Rule 11(b) substantive violations in Avvo's motion to dismiss beyond merely

offering blanket accusations that Avvo made "material falsehoods of fact."  (*See* MSC at

1-3); *see also* Fed. R. Civ. P. 11(b).  Moreover, the court has reviewed Avvo's motion to

dismiss in detail and has not identified any "lies" or "material falsehoods of fact"

warranting sanctions.  Instead, the court finds that Avvo advanced cogent, non-frivolous

legal arguments in support of dismissal of Mr. Straw's claims—many of which the court

adopts in this order.  *See supra* § III.B.2.  But even if Mr. Straw could identify arguments

or statements in Avvo's motion to dismiss with which the court disagrees, that does not

mean that Avvo's conduct merits the "extraordinary remedy" of Rule 11 sanctions.  *See*

*e.g.*, *Operating Eng'rs Pension Tr. v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988)

("Rule 11 is an extraordinary remedy, one to be exercised with extreme caution.");

*Gronquist v. Nicholas*, No. C10-5374 RBL/KLS, 2011 WL 1790637, at *5 (W.D. Wash.

May 9, 2011) (refusing sanctions where "evidence before the Court does not demonstrate

that Defendants [or their counsel]… made knowingly false statements").

Rule 60(b) concerns relief from a judgment.  Fed. R. Civ. P. 60(b).  There has

been no judgment in this case from which any party may seek relief.  Thus, this rule is

inapposite.

Finally, sanctions under the court's inherent authority are available if the court

finds either bad faith or "conduct tantamount to bad faith."  *B.K.B. v. Maui Police Dep't*,

276 F.3d 1091, 1108 (9th Cir. 2002) (quoting *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir.

1   2001) (internal quotation marks omitted).  "Sanctions are available for a variety of types

2   of willful actions, including recklessness when combined with an additional factor such

3   as frivolousness, harassment, or an improper purpose."  *Id.* (quoting *Fink*, 239 F.3d at

4   994 (internal quotation marks omitted).  Here, there is no evidence that Avvo or its

5   counsel acted in bad faith or engaged in conduct tantamount to bad faith.  Thus, sanctions

6   are not warranted under the court's inherent authority.

7        For these reasons, the court DENIES Mr. Straw's motion for an order to show

8   cause.  The court also cautions Mr. Straw that its patience with his litigation tactics is at

9   an end.  In the span of six months, Mr. Straw has filed 22 motions and "notices"—many

10  of which have no bearing on the merits of his case (*see generally* Dkt.); filed a baseless

11  motion for sanctions against Avvo and its counsel (*see generally* MSC); and, perhaps

12  most egregiously, filed complaints with the Washington and California bar association

13  against opposing counsel for doing little more than making arguments in a motion to

14  dismiss that Mr. Straw believed were incorrect and inaccurate (*see* Dkt. ## 31, 41)).  The

15  court warns Mr. Straw that it will consider the imposition of sanctions if he does not alter

16  his current pattern of excessive and meritless filings.  The court further advises Mr. Straw

17  that his case will be better served if he focuses on the factual and legal merits of his

18  claims instead of on attacking opposing counsel or filling the court's docket with

19  unnecessary notices and motions.

20              **IV.    CONCLUSION**

21        For the reasons set forth above, the court GRANTS Avvo's motion to dismiss

22  (Dkt. # 27) and DISMISSES Mr. Straw's amended complaint without prejudice and with

1   leave to amend; DENIES Mr. Straw's motion for order to show cause (Dkt. # 29);

2   DENIES Mr. Straw's "motion to allow supplemental authority" (Dkt. # 30); DENIES Mr.

3   Straw's "motion to allow attached affidavit and exhibit into the record" (Dkt. # 33); and

4   DENIES Mr. Straw's motion for judicial notice (Dkt. # 43).  Mr. Straw shall file an

5   amended complaint, if any, alleging facts that resolve the issues stated herein, no later

6   than twenty days from the filing date of this order.

7          Dated this 26th day of August, 2020.

8

9

10          JAMES L. ROBART
            United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

ORDER - 19